**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:23CR243 SEP(SPM)** |
| | ) | |
| **DWAYNE CALDWELL (5),** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**
**AND REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). This matter is before the Court on Defendant Dwayne Caldwell's Motion to Compel Disclosure (ECF No. 169-1) and Motion to Suppress Wiretap Evidence (ECF No. 170), which have been opposed by the United States. *See* ECF Nos. 179 and 180. Also before the Court is the United States' Motion to Strike Caldwell's Motion to Compel (ECF No. 180), which has been opposed by Caldwell. *See* ECF No. 181.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

On May 10, 2023, a federal grand jury returned an indictment charging Dwayne Caldwell and four co-defendants with one count of conspiracy to distribute and possess with the intent to distribute controlled substances in violation of 21

1

U.S.C. § 846. [1] Caldwell was arraigned on May 16, 2023, and made an oral motion for time to file pretrial motions. On May 25, 2023, the undersigned entered an order designating the case as complex and granting the United States' motion to continue the trial date beyond limits set by the Speedy Trial Act. ECF No. 46. On August 9, 2023, after receiving multiple status updates from the parties the undersigned entered an order setting the deadline for filing criminal pretrial motions on October 10, 2023. ECF No. 85. Thereafter, Caldwell requested multiple extensions of the pretrial motion deadline. ECF Nos. 105, 120, 131, 149. Finding the ends of justice required the requested extensions, the undersigned granted (or partially granted) the requested extensions of the pretrial motion deadline.

On May 6, 2024, within the time limits prescribed by the Court's Order Concerning Pretrial Motions, Caldwell filed a Motion to Compel Disclosure and a Motion to Suppress Wiretap Evidence. ECF Nos. 169-1 and 170. On May 20, 2024, the United States filed its response opposing Caldwell's suppression motion. ECF No. 179. The United States also filed a motion to strike Caldwell's Motion to Compel arguing here was no basis in fact or law for the motion. ECF No. 180. Caldwell filed a brief opposing the motion to strike. ECF No. 188-1. With leave of

---

[1] Co-defendants David Greenwade, Jose Vasquez, Michael Terry, and Phillip Smith were charged along with Caldwell with conspiracy to distribute and possess with the intent to distribute controlled substances. ECF No. 2, Count 1.

Court, Caldwell supplemented the motion to compel by filing additional briefing on June 24, 2024. ECF No. 192.

On June 24, 2024, the parties appeared for a hearing on Caldwell's pending pretrial motions. At the hearing, the parties argued at length about the merits of Caldwell's motion to compel. The United States insisted there was no further evidence to disclose because all discovery in its possession, custody, and control regarding the October 27th transaction had been disclosed. The United States also argued there was no evidence law enforcement used an informant in connection with the October 27th incident that led to Caldwell's arrest. Caldwell requested, and was granted, time following the hearing to submit further briefing in support of his motion to compel disclosures. The Court also heard argument on Caldwell's suppression motion and received into evidence copies of the Title III wiretap application for Target Telephone No. 3 (Govt. Ex. 1), the Affidavit in Support (Govt. Ex. 2), the Court Order (Govt. Ex. 3), Letter from Government to Agents (Govt. Ex. 4), First 10-Day Report (Govt. Ex. 5), Second 10-Day Report (Govt. Ex. 6) and a Third 10-Day Report (Govt. Ex. 7).

Caldwell filed his post-hearing briefs concerning the Motion to Compel and Motion to Suppress on July 9, 2024. ECF Nos. 199, 201, 202 & 204. The United States filed its post-hearing briefs on July 16, 2024. ECF No. 207 & 208. Both pretrial motions are now fully briefed and ready for a ruling. Based on the written

submissions of the parties, the evidence and arguments presented at the time of the pretrial motion hearing, and my review of the applicable law, for the reasons discussed below, I will deny the defendant's motion to compel, deny the motion to strike, as moot, and recommend denial of the motion to suppress wiretap evidence.

## I.    DEFENDANT'S MOTION TO COMPEL DISCLOSURES (ECF NOS. 169-1, 187 & 192) & UNITED STATES' MOTION TO STRIKE (ECF NO. 180)

Caldwell seeks an order compelling the United States to disclose whether a confidential source was involved in an October 27, 2021 transaction between Caldwell and co-defendant Greenwade. *See* ECF No. 169-1. The specific legal basis for Caldwell's motion has been elusive despite defense counsel's multiple written submissions and arguments at the pretrial motion hearing. Fed. R. Crim. P. 16(a)(1)(E) governs what documents and objects the government must disclose to a defendant. Rule 16(a)(1)(E) requires that "[u]pon a defendant's request, the government must permit the defendant to inspect and copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Under Rule 16(d)(2), if a party fails to comply with the requirements of [the Rule], the court may "order that party to permit the discovery or inspection" in addition to other relief.

As best this Court can tell, Caldwell's argument for disclosure appears to be, first, that he harbors a good faith belief that the requested information exists; second, disclosure is warranted because the requested information is relevant to a potential entrapment defense; and finally, the information sought is exculpatory information that is subject to mandatory disclosure under Brady. The Court will address these arguments in turn.

First, the record before this Court does not support Caldwell's argument that the requested information exists. In both its written submissions and at the hearing the United States has repeatedly told defense counsel that a confidential source was not used in the October 27, 2021, transaction between Caldwell and his co-defendant David Greenwade that preceded Caldwell's arrest. In responding to these assertions, Caldwell has offered nothing more than speculation and unsupported assertions that such information may exist.

Second, despite being given an opportunity to brief the entrapment issue, Caldwell has failed to provide any legal authority or factual support for his argument that the requested information is relevant to a potential entrapment defense. The Eighth Circuit has held "[t]he government may investigate criminal activity through the use of undercover agents who provide an offender with an opportunity to commit an offense." *United States v. Neri,* 89 F.4th 668, 670 (8th Cir. 2023) (quoting *United States v. Lasley*, 79 F.4th 979, 983 (8th Cir. 2023)). However, the government "may

not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime." *Id*. An entrapment defense has "two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Id.* (quoting *United States v. Ardrey*, 739 F.3d 1189, 1191 (8th Cir. 2014)). Caldwell has failed to connect the dots between the information sought in his motion to compel and any potential entrapment defense. Indeed, during the pretrial motion hearing AUSA Graviss pointed out that because Caldwell has a prior conviction for a drug related offense, as a matter of law, he cannot establish the second prong needed for an entrapment defense—namely, "a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Neri*, 89 F.4th at 670..

Finally, Caldwell's argument that *Brady vs. Maryland* and its progeny entitle him to an order compelling disclosure of the requested information also lacks merit. The Government, generally, is constitutionally required to disclose evidence that is both favorable to an accused and material either to guilt or punishment, regardless of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *See also United States v. Baez,* 983 F.3d 1029, 1044 (8th Cir. 2020) (under *Brady,* "[t]he government has an obligation to disclose evidence that is favorable to the accused and material to either guilt or punishment."). However, the Government is not required by the Constitution to make all the evidence in its file available to the

defendant. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). *Brady* does not constitute a discovery rule that broadly grants a right of pretrial discovery to a defendant. *See United States v. Bagley,* 473 U.S. 667, 675 n.7 (1985) (noting that "[a]n interpretation of *Brady* to create a broad, constitutionally required right of discovery would entirely alter the character and balance of our present system of criminal justice."); *see also United States v. Spencer,* 753 F.3d 746, 748 (8th Cir. 2014) (recognizing that *Brady* does not require pretrial disclosure of favorable, exculpatory and impeaching information). Rather, the *Brady* rule is a "self-executing constitutional rule that due process requires disclosure by the prosecution of evidence favorable to the accused that is material to guilt or punishment." *United States v. Garrett,* 238 F.3d 293, 302 (5th Cir. 2000) (Fish, J., concurring). Evidence is material only if a reasonable probability exists that, had the prosecution disclosed the evidence to the defense, the outcome of the proceeding would have been different. *United States v. Whitehead*, 176 F.3d 1030, 1036 (8th Cir. 1999). Although pretrial disclosure is not required, under *Brady*, due process is satisfied only if the information is furnished before it is too late for the defendant to effectively use it at trial. *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005).

To the extent Caldwell's motion to compel purports to seek *Brady* material, the motion lacks merit and should be denied for a couple of reasons. First, it seeks disclosure of information already provided by the United States. In both its written

submissions and at the hearing the United States has repeatedly stated a confidential source was ***not*** used in the October 27, 2021, transaction between Caldwell and his co-defendant David Greenwade. Caldwell has failed to articulate what, if any, additional information is outstanding. Based on the record before the Court it is also highly doubtful that the requested information is exculpatory. At the hearing, Caldwell insisted the requested information was exculpatory because it was relevant to a potential entrapment defense. But, as noted above, given Caldwell's prior criminal history it is dubious that Caldwell could assert entrapment. Finally, in its post-hearing brief (and at the pretrial motion hearing) the United States acknowledged its duties under *Brady* and confirmed compliance with that obligation. Caldwell has offered neither rational argument nor evidence that would call into question the United States' compliance with its obligations under *Brady*.

For the foregoing reasons, the defendant's Motion to Compel will be denied and the United States' Motion to Strike will be denied, as moot.

## II.    MOTION TO SUPPRESS WIRETAP EVIDENCE (ECF NO. 170)

Caldwell argues all evidence derived from intercepted communications from telephone number (314) 922-3443 (target telephone #3), used by Caldwell's co-defendant David Greenwade, should be suppressed because: (i) the affidavit filed in support of the Title III wiretap application for Target Telephone No. 3 was not supported by probable cause; (ii) the affidavit failed to demonstrate necessity; (iii)

the minimization requirements of the statute were not met; and (iv) service of an inventory was not achieved as required by the statute. The United States has opposed Caldwell's motion and presented documentary evidence in support of its position that the application for wiretap and electronic surveillance was supported by probable cause and complied with the statutory procedures for authorization of electronic surveillance found in Title 18, United States Code, Section 2518.  After carefully reviewing the evidence submitted and the written submissions of the parties, I make the following findings of fact of conclusions of law.

### A.    FACTUAL FINDINGS

On October 12, 2021, United States District Court Judge Stephen R. Clark signed an order authorizing the interception of wire and electronic communications occurring to and from target telephone #3 for a period of thirty days. Govt. Exh. 3. The application was accompanied by an affidavit signed by Special Agent Matthew Binnie of the Drug Enforcement Administration (DEA). Govt. Exhs. 1 & 2. The affidavit explained in detail facts reflecting that certain communications over target telephone #3 would uncover evidence of the drug trafficking and money laundering activities of Jose Vasquez, David Greenwade, Michael Terry, and others who were committing those offenses in the Eastern District of Missouri and elsewhere. Govt. Exh. 2, at ¶¶18-50. The affidavit explained the need for interception and also contained a detailed explanation of the investigative

techniques that had been tried and failed, including: (1) prior wiretaps; (2) physical surveillance; (3) controlled purchases of narcotics; (4) the use of undercover law enforcement officers; (5) electronic toll record analysis; (6) use of precision location information and tracking devices; and (7) the use of pole cameras. *Id.* at ¶¶64-105.

In the affidavit, Agent Binnie explained the areas in which each of the techniques had been successful and why the continued or additional use of the techniques would not result in the achievement of all the goals of the investigation. *Id.* Additionally, the affidavit described why other available investigative techniques would not succeed in achieving the goals of the investigation. For example, the continued use of undercover officer, the use of confidential sources, the execution of search warrants, attempts to conduct subject interviews, the use of grand jury subpoenas, and trash searches were all discussed. *See id.* Agent Binnie explained why each of the proposed investigative techniques would not result in the achievement of the goals of the investigation.

On October 22, November 2, and November 15, 2021, the government filed ten-day reports that included an accounting of the number of calls intercepted, the number of calls minimized, and a representative sample of line sheets for the intercepted calls. Govt. Exhs. 5, 6 & 7.

## B.    LEGAL CONCLUSIONS

The procedures for obtaining authorization for the interception of electronic surveillance are delineated in Title 18, United States Code, § 2518. Under § 2518, an order for electronic surveillance may be entered by a United States District Judge upon application by a federal law enforcement officer who has been authorized to make such an application by the United States Attorney General or his authorized designee. An authorization for such application is presumed to be valid unless the person challenging it makes prima facie showing that it was not authorized. *See United States v. O'Connell*, 841 F.2d 1408 (8th Cir. 1988). The application must include a full and complete description of the facts relied upon, including details of the alleged offenses, description of the facilities where communications are to be intercepted, description of the communications for which interception is sought, the identities of the persons from whom interception is suspected, whether other investigative procedures have been attempted, and the period for which interception is requested. The application must also say whether earlier applications involving the same facilities, persons, or places have been made. 18 U.S.C. § 2518.

Pursuant to Title 18, United States Code, Section 2518(3), a court may issue an order to allow for interception of wire communications if the judge finds that: (1) there is probable cause to believe that an individual is committing, has

committed, or is about to commit one of the crimes described in Title 18, United States Code, Section 2516; (2) there is probable cause to believe that particular communications concerning the offense will be obtained through such interception; (3) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous; and (4) there is probable cause to believe that the facilities or the place from which the communications are to be intercepted are being used, or are about to be used, in connection with the subject individual. Title 18, United States Code, Section 2518(a)-(d); *see also United States v. Milton*, 153 F.3d 891, 895 (8th Cir. 1998).

### 1. *Probable Cause*

The Eighth Circuit has held that courts should apply a two-step probable cause analysis in determining whether there is probable cause for court-authorized intercepts:

> First there must be probable cause that an individual has committed, is committing, or is about to commit a crime listed in 18 U.S.C. § 2516. 18 U.S.C. § 2518(3)(a). Second, the application must show probable cause that "particular communications" relating to the specific offense will be obtained from the interception of the communication. 18 U.S.C. § 2518(3)(b).

*United States v. Perez-Trevino*, 891 F.3d 359, 368 (8th Cir. 2018).

The probable cause required under this two-step analysis "does not differ from that required by the fourth amendment for a search warrant." *United States v.*

*Macklin*, 902 F.2d 1320, 1324 (8th Cir. 1990) (citing *United States v. Leisure*, 844 F.2d 1347, 1354 (8th Cir. 1988)). As with other search warrants, "the task of the issuing [judge] is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Macklin*, 902 F.2d at 1324 (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). The duty of a reviewing court is simply to ensure that the issuing judge had a "substantial basis for conclud[ing]" that probable cause existed. *Id.* The issuing judge's determination of probable cause should be accorded "great deference" by reviewing courts. *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003); *Unites States v. Sundby*, 186 F.3d 873, 875 (8th Cir. 1999) (considering only whether the judge had a substantial basis for finding probable cause). The probability, and not prima facie showing, of criminal activity is the standard of probable cause. *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000).

In applying the foregoing principles to the facts of this case, the evidence presented in the certified court records demonstrates that the issuing judge had a substantial basis for concluding that there was probable cause to believe that the individuals identified in the application had committed or were about to commit

the identified offenses. The evidence presented further demonstrates that the issuing judge had a substantial basis for concluding that there was probable cause to believe that communications about the target offenses would be obtained from the interception of the communication over the identified devices. Caldwell argues that because Agent Binnie used the phrase "I believe" in multiple places in the affidavit when relaying observations by investigators and discussing calls intercepted over previous telephones, assertions in the affidavit are speculative and, therefore, fall short of establishing probable cause. The fallacy of Caldwell's assertion is apparent when Agent Binnie's "I believe" phrases are considered in the context of the balance of the information contained in the supporting affidavit. *See Perez-Trevino*, 891 F.3d at 369 (holding "such hyper-technical parsing of ['I believe'] phrasing is inconsistent with the evidence and common sense").

The affidavit asserts undercover investigators collected $260,000 in drug proceeds from Caldwell co-defendant Jose Vasquez and intercepted calls over his telephone during which he discussed the price of narcotics. Govt. Exh. 2, ¶ 21. On September 7, 2021, Vasquez sent a text message to an undercover officer (UC-2) arranging to drop of drug proceeds to (UC-2). Vasquez got inside David Greenwade's Dodge Ram truck with nothing in his hands. Vasquez then got out of the truck carrying a bag and texted UC-2: "Just got out." Agent Binnie said that he believed that Greenwade gave Vasquez cash and that he contacted UC-2 to say he

was ready. Vasquez then drove to meet with UC-2 and gave UC-2 $80,020. *Id.* ¶ ¶ 26-29.

On September 10, 2021, investigators intercepted a series of calls between Vasquez and Greenwade during which they discussed meeting at the QuikTrip. Vasquez called back to say, "QuikTrip's packed as a mother fucker," and that he had moved to Walgreens. A Hazelwood police officer saw Vasquez drive off the Walgreens lot before Greenwade pulled on to the lot. Vasquez then called Greenwade to tell him there was a Hazelwood police officer circling. Greenwade said he saw him. They then agreed to meet at a "hood spot." Investigators saw Vasquez get out of his car and get into Greenwade's truck. When Vasquez got out of the truck, he was carrying a bag. *Id.,* ¶ ¶ 30-34. Later that evening Vasquez called Greenwade to tell him "It was just 3 doves short from 26." Vasquez told Greenwade it was "25.7." They decided not to meet that night because "all them mothafucking laws are in the streets." Agent Binnie said that based upon his training and experience, he believed that Greenwade was supposed to give Vasquez $26,000, but that he had only given him $25,700.  A reasonable inference from the asserted facts in the affidavit is that Vasquez and Greenwade were committing a crime when they met because they were avoiding law enforcement officers.

The affidavit further asserts that later in September, a series of calls was intercepted over Vasquez's phone during which he said he had someone in town. Investigators saw Vasquez meeting with an unidentified Hispanic male. Vasquez spoke with Michael Terry who was supposed to meet with him and when Terry did not show up, Vasquez called Greenwade to find out what was going on. *Id.,* ¶ ¶ 38-47. Surveillance conducted by investigators was consistent with Terry and Greenwade meeting with Vasquez's "guy," who was likely a source of supply for narcotics. *Id.,* ¶ ¶ 48-49. Based upon the entirety of the affidavit, District Judge Clark made the correct decision that there was probable cause to show that Greenwade was committing one or more of the target offenses and that he was using target telephone #3 to do so.

### 2. *Necessity*

Under § 2518(1)(c), each application for a wiretap authorization must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *See United States v. Turner,* 781 F.3d 374, 382 (8th Cir. 2015) (quoting 18 U.S.C. § 2518(1)(c)). Section 2518(3)(c) similarly requires that in issuing a wiretap authorization order, the district court must determine whether "normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried or to be too dangerous." *See United*

*States v. West,* 589 F.3d 936, 939 (8th Cir. 2009) (quoting 18 U.S.C. § 2518(1)(c)). Together, these sections make up the necessity requirement for granting an order to receive wire intercepts from a phone.

It is well established that although wiretaps should not be "routinely used as the initial step in an investigation," the necessity requirement "does not require that law enforcement exhaust all possible techniques before applying for a wiretap." *Turner,* 781 F.3d at 383 (quotation marks omitted). "If law enforcement officers are able to establish that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each co-conspirator, the necessity requirement is satisfied." *Id.* at 382 (quoting *United States v. West*, 589 F.3d 936, 939 (8th Cir. 2009)). Indeed, the Eighth Circuit has interpreted the necessity requirement to "restrict wiretaps to situations in which they are necessary as well as reasonable, but not to require the government to show the exhaustion of specific or all possible investigative techniques before wiretap orders could be issued." *United States v. Thompson,* 690 F.3d 977, 986 (8th Cir. 2012) (internal quotations omitted) (quoting *United States v. Daly,* 535 F.2d 434, 438 (8th Cir. 1976)). Moreover, whether the statutory requirement is met is a question of fact to be determined by the issuing judge "in a commonsense manner." *Id.*

In this case, the affidavit supporting interception sets forth appropriate necessity to support the issuance of the interception orders. As the affidavit

explained, the investigation revealed a long-term money laundering and drug trafficking network. Agent Binnie sufficiently explained the goals expected to be achieved through the wiretap of target telephone #3 and how the wiretap would further the goals of the investigation.

While some of the other techniques employed by investigators may have been initially fruitful, the entire scope of the organization was certainly not revealed and, as the investigation progressed and continued, the shortcomings of traditional law enforcement investigative techniques became apparent. *See United States v. Maxwell*, 25 F.3d 1389, 1394 (8th Cir. 1994) ("Officers had not been able to determine from other investigative methods the scope of the suspected conspiracy or to develop enough evidence to successfully prosecute the suspects whom they had identified."). The government is not required to use a wiretap only as a last resort. *United States v. Macklin,* 902 F.2d 1320, 1327 (8th Cir. 1990).

The defendants argue that because evidence had been obtained to support prosecutions of some of the individuals charged in the conspiracy, that fact destroys the necessity for obtaining a wiretap. However, as the government pointed out, at the time the order for interceptions was signed the defendant was not a target subject and it was only through interception of communications over target telephone #3 that investigators were able to identify additional participants in the

conspiracy including Caldwell. For these reasons, the defendant's Motion to Suppress based on necessity should be denied.

### 3. *Minimization*

Title 18, United States Code, Section 2518(5) requires that court-authorized electronic surveillance "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." "Section 2518 'does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to minimize the interception of such conversations.'" *United States v. West*, 589 F.3d 936, 939 (8th Cir. 2009) (quoting *Scott v. United States*, 436 U.S. 128 (1978)). Furthermore, the appropriate remedy for improperly minimized calls would only be the suppression of those *specific* calls, not *all* intercepted calls. *See United States v. Cox*, 462 F.2d 1293, 1301-02 (8th Cir. 1972) (holding that nonincriminating calls that should have been minimized can be suppressed, but those calls that fall within the scope of the warrant shall be admitted) (emphasis added).

In this case, Caldwell alleges, without citing any evidence, that not all agents responsible for monitoring phone calls were informed of or complied with the procedures for minimizing phone calls required by statute and adopted in this case. The record before the Court suggests otherwise. On the date the interception order was signed by Judge Clark, Assistant United States Attorney Graviss sent a letter

to Agent Binnie outlining guidelines for the conduct of wire and electronic surveillance, including instructions to agents as to the types of conversations to be intercepted, the types to be minimized, and methods of doing so. Govt. Ex. 4. In addition, the evidence of record reflects that each of the agents who monitored the wire and electronic (text messages) communications in this case were required to read this letter and sign, indicating that they understood the terms and conditions of the judge's order. *Id.* Finally, the United States presented separate 10-day reports that were filed with the Court. Govt. Exhs. 5, 7 & 7. Those reports allowed the issuing judge to specifically review the calls being monitored and determine if any remedies need to be employed to avoid unnecessary intrusion. In sum, notwithstanding the defendants' suggestions to the contrary, there is no evidence of record that there were non-pertinent or privileged calls which should have been minimized but were not. As such, Defendants' motion to suppress based on a failure to minimize should be denied.

## CONCLUSION

For the reasons set out above, Defendant Caldwell's motion to compel lacks merit and will be denied. The United States' motion to strike the motion to compel will be denied, as moot. Finally, because Caldwell's motion to suppress wiretap and electronic surveillance evidence fails to identify a basis for suppression, it should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Disclosure (ECF Nos. 169-1, 187 & 192) is **DENIED.**

    **IT IS FURTHER ORDERED** that the United States' Motion to Strike (ECF No. 180) is **DENIED, as moot**.

    **IT IS HEREBY RECOMMENDED**, that Defendant's Motion to Suppress Wiretap Evidence (ECF No. 170) be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. *Thompson v. Nix,* 897 F.2d 356, 357 (8th Cir. 1990).

Trial in this case will be set before the Honorable Sarah E. Pitlyk, by separate order.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated: October 24, 2024

21